IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL RICHARD STEVENSON,   )
                               )   Civil No. 04-361-MO
        Petitioner,      )
                               )
    v.                       )
                               )
JEAN HILL,               )
                               )   OPINION AND ORDER
        Respondent.     )

C. Renee Manes
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

      Attorney for Petitioner

Hardy Myers
Attorney General
Douglas Y.S. Park
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

///

    1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254. In this case, petitioner challenges the legality of his state convictions for Assault in the First Degree and Assault in the Second Degree. For the reasons which follow, the Petition for Writ of Habeas Corpus (#1) is denied.

## BACKGROUND

Petitioner and the victim in this case had been married approximately four years at the time of the crimes in question. Respondent's Exhibit 111, p. 2. On or about April 9, 1998, the victim told petitioner that she wanted a divorce, and disclosed that she had obtained an abortion approximately two years earlier without his knowledge. Respondent's Exhibit 115.

On April 19, 1998, petitioner traveled to the victim's residence, where the two had an altercation. Respondent's Exhibit 102, pp. 9-10. The victim left on her bicycle, but petitioner chased her in his car, accelerating to a speed of between 36-38 miles per hour, and struck the victim. Respondent's Exhibit 137, Supplemental Reconstruction Report. Petitioner exited the car and repeatedly stomped on the left side of the victim's head. Respondent's Exhibit 137, Ryan Report, pp. 2-3. Petitioner then struck the victim in the head several times with his elbow before walking away, telling a crowd of people that the victim "killed my baby." Id at 3-4. When petitioner heard the victim begin to moan,

2 - OPINION AND ORDER

he returned to where she lay and proceeded to cut her throat with a piece of broken glass from his windshield. <u>Id</u>. Remarkably, the victim survived this attack.

Based on these events, petitioner was charged with two counts of Assault in the First Degree and one count of Assault in the Second Degree. In exchange for his guilty plea, the State agreed to dismiss the second Assault in the First Degree charge. Petitioner was ultimately sentenced to a total of 160 months in prison. Respondent's Exhibit 101.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. <u>State v. Stevenson</u>, 161 Or.App. 667, 984 P.2d 959, <u>rev. denied</u>, 329 Or. 447, 994 P.2d 126 (1999).

Petitioner next filed for post-conviction review ("PCR") in Malheur County, but the PCR trial court denied relief. Respondent's Exhibit 144. The Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review. <u>Stevenson v. Lampert</u>, 191 Or.App. 306, 82 P.3d 654 (2003), <u>rev. denied</u>, 336 Or. 422, 86 P.3d 1138 (2004).

On March 10, 2004, petitioner filed this federal habeas corpus action raising four grounds for relief, with various sub-claims. Because those grounds are adequately identified in the Petition and the State's Response, the court need not list them here. Respondent asks the court to deny relief on the Petition because

3 - OPINION AND ORDER

some claims are procedurally defaulted, and the state court decisions on the remainder of petitioner's claims are entitled to deference.

**I.    Unargued Claims.**

In his Petition, petitioner raises four grounds for relief containing several sub-claims, but provides briefing to support only the following claims: (1) trial counsel was ineffective when he failed to adequately investigate an involuntary intoxication defense; (2) petitioner is actually innocent of his crimes; and (3) petitioner's guilty pleas were not knowing and voluntary because he was unaware of the availability of an involuntary intoxication defense. As petitioner has not argued the merits of the additional claims contained in his Petition, the court deems these claims abandoned. Cf. Doty v. County of Lassen, 37 F.3d 540, 548 (9th Cir. 1994) ("[t]he failure to brief [an] issue waives [the appellant's] right to appeal" it).

**II.    The Merits.**

**A.    Standard of Review.**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence

4 - OPINION AND ORDER

presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

5 - OPINION AND ORDER

In such an instance, although the court independently reviews the record, it still defers to the state court's ultimate decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

Petitioner asserts that the court should not lend deference to the PCR trial court's decision in this case because it improperly utilized a "preponderance of the evidence" standard when considering his claims. In Oregon, litigants are required to prove **facts** by a preponderance of the evidence. ORS 138.620(2). The PCR trial court in this case concluded that petitioner "failed to show by a preponderance of the evidence that his trial counsel was inadequate in any respect." Respondent's Exhibit 144, p. 2. This statement is "reasonably read as addressing the general burden of proof in postconviction proceedings with regard to the factual contentions. . . ." Holland v. Jackson, 542 U.S. 649, 654 (2004). Accordingly, the court lends deference to the PCR trial court's decision.

      B.   **Analysis**.

        1.   Ineffective Assistance of Counsel.

Petitioner asserts that the violent episode giving rise to his convictions was attributable to an adverse reaction he suffered from taking Remeron, an antidepressant drug. He contends that his only possible defense was one of involuntary intoxication, and argues that had his trial attorney adequately investigated such a defense, he would not have pled guilty.

6 - OPINION AND ORDER

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel.    First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 686-687 (1984).  Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." Id at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense.    The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 694. In proving prejudice, a petitioner who has pled guilty to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The PCR trial court made the following findings with respect to petitioner's claim:

> Trial counsel investigated a possible "mental defect" defense by the use of four experts. Although the experts indicated that petitioner had a personality disorder, was manipulative and had a long history of substance abuse, none of them believed that Remeron was responsible for petitioner's actions on the day in question. Based on this and counsel's knowledge of petitioner's

history of mental problems, aggressive and violent
behavior with his wife and petitioner's history of
substance abuse, counsel advised petitioner to
plead guilty.

Petitioner's claim of inadequate assistance of
trial counsel rests on the report of a single
expert, discovered long after sentencing, who is
willing to testify that Remeron did cause
petitioner's actions. The court is not persuaded.
It appears that the expert did not have all of the
information available to him and, more importantly,
does not indicate how much Remeron is necessary to
result in the kind of behavior involved here.

Respondent's Exhibit 144, pp. 1-2. The PCR trial court therefore

concluded that trial counsel was not ineffective in any respect.

Id at 2.

Petitioner supports his ineffective assistance of counsel

claim with a number of arguments. He asserts that: (1) the four

experts hired by counsel were ill-suited to provide a proper

diagnosis; (2) while the State's blood test failed to detect any

Remeron in petitioner's bloodstream, counsel should have hired an

independent expert to conduct a separate test on the blood sample

and evaluate the State's test; and (3) counsel should have found an

appropriate expert to evaluate the medical evidence, or at least

provided his experts with the documents necessary to make an

informed medical evaluation. According to petitioner, with a

separate blood sample and a proper expert, he would have had a

viable voluntary intoxication defense.

The State took a blood sample from petitioner 27 hours after

the assault took place. The sample was tested to determine if

8 - OPINION AND ORDER

petitioner had at least 20 nannograms per milliliter ("ng/ml") of
Remeron in his bloodstream.  The test came back negative, prompting
petitioner to argue during his PCR action that the State's test was
not sensitive enough to detect low levels of Remeron in his
bloodstream.  A second blood test was conducted, and this test also
showed no sign of Remeron in petitioner's bloodstream.

Petitioner argues that the second blood test was compromised
because the blood sample was too old and not properly stored to
yield an accurate result.  However, the results of petitioner's
second blood test were immaterial absent any evidence before the
PCR trial court which demonstrated that a level of Remeron less
than 20 ng/ml could induce the kind of violence exhibited in this
case.  As the PCR trial court found, petitioner's PCR expert
testimony "more importantly, does not indicate how much Remeron is
necessary to result in the kind of behavior involved here."
Respondent's Exhibit 144, p. 2.  Petitioner has not rebutted this
finding by clear and convincing evidence, and is therefore unable
to demonstrate that a level of Remeron lower than 20 ng/ml could
cause the level of violence displayed in this case.

In addition, the State presented evidence to the PCR trial
court that on two different occasions before petitioner ever
started taking Remeron, he intentionally rammed his vehicle into
cars driven by his wife.  Respondent's Exhibit 137, p. 7.
Petitioner did not rebut this evidence during his PCR trial, and

the PCR trial court's decision specifically referenced counsel's knowledge of petitioner's history of "aggressive and violent behavior with his wife . . . ." Respondent's Exhibit 144, p. 1. Although petitioner now objects to the admission of that evidence on hearsay grounds, no objection was raised before the PCR trial court, and he cannot raise a hearsay objection to the PCR evidence now.

Petitioner concedes that if he used his car as a weapon against the victim on two occasions before he began taking Remeron, "then there is no basis to believe that this third assault could be . . . attributed to an adverse response to an antidepressant." Memo in Support (#41), p. 8. Since the evidence regarding the prior automotive assaults was admitted without objection, the evidence was properly before the PCR trial court for consideration.

Because the PCR trial court had no evidence before it that Remeron was in petitioner's bloodstream, and given the evidence in the record regarding petitioner's prior assaults against his victim, the PCR trial court had no basis to believe that the assault at issue could be attributed to an adverse reaction to Remeron. Accordingly, its decision that counsel was not constitutionally ineffective based on his alleged failure to investigate an involuntary intoxication defense is neither contrary

to, nor an unreasonable application of, clearly established federal law.[1]

      2.  <u>Actual Innocence</u>.

Petitioner next argues that he is actually innocent of his crimes, and is therefore entitled to habeas corpus relief. Oregon's PCR proceedings do not lie for such a claim. <u>See</u> O.R.S. 138.530 (allowing collateral challenges for jurisdictional defects of constitutional deprivations). Accordingly, there is no decision to which to defer, and the court conducts an independent review of the record with respect to this claim.

In <u>Herrera v. Collins</u>, 506 U.S. 390, 417 (1993), the Supreme Court assumed without deciding that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and

---

[1] Petitioner asks the court not to lend deference to the PCR trial court's decision because the State allegedly presented false evidence pertaining to the prior instances where petitioner used his car as a weapon against his wife. As previously noted, the State's evidence was offered without objection, and the PCR trial court found that petitioner had a history of aggressive and violent behavior toward the victim. This was not an unreasonable determination of the facts in light of evidence presented.
    Petitioner also urges the court not to defer to the PCR trial court because it refused to consider evidence that his cousin allegedly suffered a psychotic reaction to Prozac. The PCR trial court did not blankly refuse to consider the evidence, but determined it was more speculation than substance, and therefore sustained the State's objection. Respondent's Exhibit 144, p. 2. Petitioner's disagreement with this evidentiary ruling is insufficient to overcome the statutory requirement that this court defer to the PCR trial court's decision. In any event, even if no deference were due on this point, the court's decision would not be different.

warrant federal habeas relief if there were no state avenue open to process such a claim."  In House v. Bell, 126 S.Ct. 2064 (2006), the Court again declined to decide whether a capital petitioner may assert a freestanding actual innocence claim.  Id at 2087.  It did, however, state that the threshold for such a claim is "extraordinarily high," and exceeded that of a "gateway" showing of actual innocence under Schlup v. Delo, 513 U.S. 298 (1995), to excuse a procedural default.  To prevail on a freestanding innocence claim, a petitioner "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).

In assessing claims of actual innocence, courts "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." Schlup, 513 U.S. at 332.  In assessing the adequacy of petitioner's showing, the court is not bound by the rules of admissibility that would govern at trial.  "Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial."  Id. at 327.  "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been

wrongly excluded or to have become available only after the trial."
Id. at 328 (internal quotations omitted).    In rebutting
petitioner's claim of actual innocence, respondent is not limited
to the existing record and is permitted to present any admissible
evidence of petitioner's guilt even if that evidence was not
presented at trial.    See Bousley, 523 U.S. at 624 (addressing
state's rebuttal in guilty plea case).

In this case, petitioner is not subject to the death penalty,
thus it is questionable whether he may raise a freestanding claim
of actual innocence.    Nevertheless, assuming that non-capital
petitioners may assert such a claim, petitioner is unable to
establish that he is truly innocent.    Petitioner's claim of actual
innocence is based on his allegedly adverse reaction to Remeron,
which resulted in the violent attack perpetrated on the victim.
Petitioner has submitted a variety of exhibits in support of his
freestanding claim of innocence including his medical history,
records documenting his family's susceptibility to adverse
reactions to antidepressant medications, and expert physician
opinions.

Respondent has submitted an affidavit from the victim in this
case, which the court considers only for purposes of petitioner's
claim of actual innocence.    In her affidavit, the victim attests as
follows:

    10.    In 1996 . . . [o]n the day I was attempting to
           leave, Michael Stevenson was arguing with me so I

    13 - OPINION AND ORDER

put my son in my car and was attempting to drive
away. Michael Stevenson got in his car, which was
parked behind mine, and he began to ram his car
into mine. He jumped out of his car and grabbed
our son from me. . . .

11.      Before Michael Stevenson attempted to kill me
on April 19, 1998, he would often use the car to
intimidate and harass me. On at least two other
occasions, not including the time described above,
Michael struck a car I was driving with his car.
One occasion was near the intersection of 24th and
Chambers and another was off the River Road area.
Since being beaten by Michael Stevenson, I
sometimes have trouble remembering specific dates
and details of events. But I definitely remember
that he drove into me with a car on at least those
two occasions, in addition to the time where he hit
my car and then tried to take our son from me.

Respondent's Exhibit 151, p. 3.

Petitioner attempts to lessen the impact of the victim's
recent affidavit by claiming that the victim: (1) is "hazy" on the
particulars of the prior vehicular violence; (2) never reported
these incidents to the police or petitioner's father (who was
assisting her financially at the time); and (3) would have
indicated that Remeron was responsible for the attack at issue had
she been asked.

Petitioner's freestanding claim of actual innocence carries
with it an extraordinarily high threshold which requires him to
affirmatively prove that he is probably innocent. Upon
consideration of all the evidence before it, the court finds that
in light of the victim's affidavit dated January 4, 2007,
petitioner cannot prove that his violent conduct was likely caused

14 - OPINION AND ORDER

by an adverse reaction to Remeron.  For this reason, petitioner does not meet the extraordinarily high threshold required for freestanding claims of actual innocence.

     3.  <u>Involuntary Guilty Plea</u>.

Finally, petitioner argues that his guilty plea was not knowing and intelligent because he was unaware that he had a viable voluntary intoxication claim.  The PCR trial court did not make any specific findings with respect to such a claim, instead choosing to focus on petitioner's ineffective assistance of counsel claim that counsel failed to perform an adequate investigation and prepare a defense based upon involuntary intoxication.  Respondent's Exhibit 144.  The court therefore conducts an independent review of the record.

Due process requires that a defendant's guilty plea be voluntary and intelligent.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969).  A guilty plea is voluntary if it is given by a defendant who is fully aware of the direct consequences of his plea.  <u>Mabry v. Johnson</u>, 467 U.S. 504, 509 (1984); <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970).

For the reasons previously discussed in section II(B)(1) of this Opinion, petitioner failed to demonstrate to the PCR trial court that he had a meritorious voluntary intoxication defense which he could have presented at trial.  Accordingly, upon an independent review of the record, the PCR trial court's decision

15 - OPINION AND ORDER

denying relief on such a claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## III. __Expansion of the Record/Evidentiary Hearing__.

Petitioner attempts to supplement the record with new evidence not presented to the state courts, and asks the court to conduct an evidentiary hearing.  Respondent objects to the admission of all documents contained in petitioner's exhibits, except for the Food and Drug Administration documents which post-date petitioner's PCR trial.  Respondent also argues that petitioner is not entitled to an evidentiary hearing.

Rule 7 provides that this court "may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." According to the advisory note to Rule 7, the purpose of expanding the record "is to enable the judge to dispose of some habeas petitions . . . without the time and expense required for an evidentiary hearing" or to be "helpful when an evidentiary hearing is ordered."  A habeas litigant attempting to expand the record under Rule 7 is held to the same requirements as if he were seeking an evidentiary hearing.  Holland v. Jackson, 124 S.Ct. 2736, 2738 (2004); See also Cooper-Smith v. Palmateer, 397 F.3d 1236 (9th Cir. 2005).

Petitioner is not entitled to an evidentiary hearing in federal court to further develop the merits of his claim unless he

diligently attempted to develop the evidence in state court, but was unable to do so.  Williams v. Taylor, 529 U.S. 420, 433-438. (2000).  If petitioner has failed to diligently failed to develop the evidence, an evidentiary hearing is permitted only if petitioner's claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence.  28 U.S.C. § 2254(e)(2)(A)(i) and (ii). In addition, the facts underlying the claim must be sufficient to establish by clear and convincing evidence, that no reasonable factfinder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254 (e)(2)(B).

Petitioner first claims that he meets the requirements for an evidentiary hearing because the PCR trial court refused to consider a report indicating that petitioner's cousin had previously suffered from an adverse reaction to Prozac.  The State objected to the introduction of this report, and the PCR trial court sustained the objection on the basis that the report "is more speculation than substance."  Respondent's Exhibit 144, p. 2.  A ruling on a relevance objection does not indicate, as petitioner suggests, that the PCR trial court simply refused to consider the report.  Even if it did, petitioner's attempt to develop additional evidence (such as family medical history related to anti-depressants) would be

17 - OPINION AND ORDER

futile given the evidence before the PCR trial court that petitioner had a history of vehicular assault against the victim well before he began taking Remeron.

Petitioner also claims that he is entitled to an evidentiary hearing on his freestanding claim of actual innocence on the basis that Oregon law does not allow its PCR courts to consider such claims. As previously discussed, the court considered all evidence petitioner and respondent presented with respect petitioner's Herrera claim, and concluded that petitioner is clearly not entitled to relief on the claim. Accordingly, further evidentiary development with respect to this claim would be futile. Petitioner's request for an evidentiary hearing is therefore denied.

## **CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is DENIED.

IT IS SO ORDERED.

DATED this __28th__ day of March, 2007.


     /s/Michael W. Mosman   
          Michael W. Mosman
          United States District Judge

18 - OPINION AND ORDER